CASE NO.: 22-16440

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIRSTIN BLAISE LOBATO,

        Plaintiff-Appellee,

    vs.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT; THOMAS THOWSEN; AND JAMES LAROCHELLE,

        Defendants-Appellants.

Appeal from the United States District Court
District of Nevada, Las Vegas
Case No.: 2:20-cv-01273-RFB-EJY

## DEFENDANTS-APPELLANTS' REPLY BRIEF

Marquis Aurbach
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
*Attorneys for Defendants-
Appellants, Las Vegas Metropolitan
Police Department, Thomas
Thowsen, and James LaRochelle*

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................1

II. THIS COURT HAS JURISDICTION BECAUSE THE DETECTIVES ARE NOT CONTESTING THE MATERIAL FACTS ..................................2

    A.  THE PARTIES AGREE ON THE MATERIAL FACTS....................2

    B.  THE DISTRICT COURT'S "DISPUTED FACTUAL" FINDINGS ARE EITHER IMMATERIAL OR "BLATANTLY CONTRADICTED" BY THE RECORD. ...........................................5

III. LEGAL ARGUMENT....................................................................................7

    A.  THE DISTRICT COURT ERRED IN FAILING TO GRANT THE DETECTIVES QUALIFIED IMMUNITY ON LOBATO'S §1983 FABRICATION OF EVIDENCE CLAIM. .........................................7

        1.  Lobato understates *Deveraux*'s "stringent" fabrication of evidence test. ...............................................................7

        2.  Lobato's evidence does not meet *Devereaux's* "stringent test" because none of the alleged mischaracterizations or inaccuracies were fabricated by the Detectives. .........................9

        3.  There is no evidence of indirect or circumstantial fabrication. ..............................................................21

        4.  Even if a constitutional violation occurred, the Detectives are entitled to qualified immunity under the second prong of the qualified immunity analysis. ................................22

        5.  Lobato cannot establish causation. ...........................................28

    B.  THE DISTRICT COURT ERRED IN FAILING TO GRANT QUALIFIED IMMUNITY ON LOBATO'S §1983 CONTINUED DETENTION WITHOUT PROBABLE CAUSE CLAIM. ...............29

MAC:14687-221 5048786_3.docx

C.     THE DISTRICT COURT ERRED IN FAILING TO GRANT QUALIFIED IMMUNITY ON LOBATO'S §1983 CONSPIRACY CLAIM....................................................29

D.     THE DISTRICT COURT ERRED IN FAILING TO DISMISS LOBATO'S REMAINING STATE CLAW CLAIMS.......................30

IV.     CONCLUSION...............................................................................31

MAC:14687-221 5048786_3.docx

# TABLE OF AUTHORITIES

## CASES

*Amory v. Katz*,
   No. 3:15-CV-01535, 2016 WL 7377091 (D. Conn. Dec. 19, 2016) ...................21

*Armstrong v. Reynolds*,
   22 F.4th 1058 (9th Cir. 2022) ...............................................................................30

*Ballou v. McElvain*,
   29 F.4th 413, 421 (9th Cir. 2022) .........................................................................2

*Black v. Montgomery Cty.*,
   835 F.3d 358 (3d Cir. 2016)...............................................................................7, 8

*Caldwell v. City & Cty. of San Francisco*,
   889 F.3d 1105 (9th Cir. 2018) .............................................................................28

*Constanich v. Dep't of Soc. & Health Servs.*,
   627 F.3d 1101 (9th Cir. 2010) ........................................................... 9, 23, 26, 27

*Devereaux v. Abbey*,
   263 F.3d 1070 (9th Cir. 2001) ....................................... 7, 8, 9, 14, 18, 22, 23, 25

*District of Columbia v. Wesby*,
   138 S.Ct. 577 (2018) ...........................................................................................29

*Downs v. Hoyt*,
   232 F.3d 1031 (9th Cir. 2000) ...............................................................................6

*Estate of Anderson v. Marsh*,
   985 F.3d 726 (9th Cir. 2021).................................................................................2

*Gausvik v. Perez*,
   345 F.3d 813 (9th Cir. 2003).................................... 1, 8, 9, 13, 23, 24, 25, 27, 29

MAC:14687-221 5048786_3.docx

*George v. Morris*,
736 F.3d 829 (9th Cir. 2013)...............................................................11

*Halsey v. Pfeiffer*,
750 F.3d 273 (3d Cir. 2014)...................................................................7

*Liston v. City of Riverside*,
120 F.3d 965 (9th Cir. 1997)................................................................27

*McSherry v. City of Long Beach*,
584 F.3d 1129 (9th Cir. 2009) .................................................... 18, 20

*Mendoza v. Block*,
27 F.3d 1357 (9th Cir. 1994)................................................................22

*Morse v. Fusto*,
804 F.3d 538 (2d Cir. 2015)................................................................20

*Peck v. Montoya*,
51 F.4th 877 (9th Cir. 2022) ...............................................................22

*Petty v. City of Chicago*,
754 F.3d 416 (7th Cir. 2014)..................................................................8

*Richards v. Cty. of San Bernardino*,
2022 WL 2292830 (9th Cir. June 24, 2022) .....................................20

*Richards v. Cty. of San Bernardino*,
39 F.4th 562 (9th Cir. 2022) .................................................................7

*Scott v. Harris*,
550 U.S. 372 (2007) ............................................................................11

*Shafer v. Cty. of Santa Barbara*,
868 F.3d 1110 (9th Cir. 2017) ............................................................23

*Smiddy v. Varney*,
665 F.2d 261 (9th Cir. 1981)...............................................................28

MAC:14687-221 5048786_3.docx

*Spencer v. Peters,*
857 F.3d 789 (9th Cir. 2017)................................................. 7, 9, 24, 26, 27, 28, 29

*Tabb v. Christianson*,
855 F.3d 757 (7th Cir. 2017)...............................................................6

*Tobias v. East*,
20-55845, 2021 WL 5194098 (9th Cir. 2021) ...................................29

*United States v. Stanert*,
762 F.2d 775 (9th Cir. 1985)..............................................................27

*White v. Pauly*,
580 U.S. 73 (2017) ............................................................................23

*Wright v. Beck*,
981 F.3d 719 (9th Cir. 2020)..............................................................23

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ...........................................................11

*Ziglar v. Abbasi*,
582 U.S. 120 (2017).........................................................................30

## **OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ...................................................8

## **STATUTES**

42 U.S.C. §1983 ............................................................ 7, 25, 29, 30, 31

# I. __INTRODUCTION__

Jurisdiction over this appeal is appropriate because the Detectives are not contesting Lobato's facts or evidence. Lobato alleges the Detectives' fabricated evidence in their Officer's Report (11-ER-2379-2407) and Arrest Report (collectively "the Reports") by (1) omitting exculpatory evidence about when Lobato's attack occurred; (2) suggesting Lobato was "unsure" about the location of her attack; (3) omitting statements regarding the assailant's size; and (4) claiming Lobato amputated the attacker's penis. Lobato's facts, although true, do not support a fabrication of evidence claim. Lobato incorrectly asks this Court to view her facts in a vacuum and not in the context of the entire investigation. When Lobato's facts are correctly analyzed, it is obvious that, although the Reports contain alleged inaccuracies and mischaracterizations, the contested evidence is not fabricated or invented as it is supported by credible evidence from other sources. This Circuit holds that, in such situations, the suspect's constitutional rights are not violated. *See, e.g., Gausvik v. Perez*, 345 F.3d 813 (9th Cir. 2003) (suspect's due process rights not violated by "careless or inaccurate" investigation).

In addition, Lobato has failed to meet her burden under the second prong of the qualified immunity analysis – i.e, that the law was clearly established. As set forth in Appellants' Opening Brief, the closest Ninth Circuit is *Gausvik*. Lobato's

MAC:14687-221 5048786_3.docx

Brief does not acknowledge, or even cite to, *Gausvik*.[1] Because Lobato does not provide a closely analogous case, summary judgment is appropriate under this prong as well.

## II. THIS COURT HAS JURISDICTION BECAUSE THE DETECTIVES ARE NOT CONTESTING THE MATERIAL FACTS

Lobato argues this Court lacks jurisdiction over this appeal. AB at 34-37. This Court has jurisdiction to review purely legal questions, but it cannot resolve factual disputes. *See e.g., Estate of Anderson v. Marsh*, 985 F.3d 726, 731-32 (9th Cir. 2021). The issue is "whether the defendant would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022) (citing *Estate of Anderson*, 985 F.3d at 731). Here, the Detectives are not contesting Lobato's factual assertions or the district court's disputed facts findings. Rather, the Detectives are contesting the district court's application of the law to those facts.

### A. THE PARTIES AGREE ON THE MATERIAL FACTS.

The gravamen of Lobato's case is the Detectives framed her for Bailey's murder by intentionally fabricating evidence in their Officer's Report and Arrest Report. *See e.g.*, 1-ER-0013-0016. Lobato's Answering Brief identifies six specific

_____

[1] The district court's Order also ignored the case and does not cite to it.

MAC:14687-221 5048786_3.docx

factual omissions or mischaracterizations that she claims constitute deliberate fabrication:

**1.** __Timing of the attack:__ Lobato claims the Detectives had actual knowledge she was discussing a Memorial Day Weekend Attack but deliberately continued their investigation knowing she was factually innocent of Bailey's July 8th murder. Lobato's supporting evidence includes:

- She told the Detectives that her attack occurred "over a month ago", but they omitted the statement from their Reports.

- She told the Detectives that immediately after her attack, she "ditched" her car at her ex-boyfriend's house, and produced tow receipts to prove it. The Officer's Report said the two events were unrelated as the car issue occurred "a month before" the Bailey murder.

- Lobato told the Detectives she returned to Panaca around July 13th "to get clean" from drugs. In their Reports, the Detectives said Lobato returned to Panaca to get treatment for depression resulting from her attack.

AB at 20, 21, 22, 24, and 25.

**2.** __Location of the attack:__ Lobato claims the Detectives included misleading facts in their Reports about the location of her attack. She cites to the following facts:

- She told the Detectives her attack occurred on the east side of Las Vegas in a Budget Suites' parking lot, whereas Bailey's murder occurred on the west side of Las Vegas near a dumpster by a bank.

- Although both Reports accurately report her statement, the Detectives prefaced her statements that she "appeared unsure" due to her drug use and unfamiliarity with Las Vegas.

AB at 21.

**3.**     **Characteristics of the Attacker:** Lobato complains the Detectives omitted her statements that her attacker was "really big" and "seemed like a giant" from both Reports. AB at 22.

**4.**     **Nature of the injuries inflicted:** Lobato asserts the Detectives misrepresented the injuries she admitted to inflicting on her attacker. She cites to the following evidence:

- She told the Detectives "I cut his penis, I remember that" and that "I think I was trying to cut it off but I don't know if I actually did."

- The Officer's Report states that she "cut it off" and the Arrest Report says she "cut it . . . [and] thought that she had severed the penis from the male's body."

AB at 21.

**5.**     **Lobato's state of mind during the attack**: Lobato complains the Detectives included words and phrases in the Reports to implicate her in the Bailey murder. In support, she refers to the following:

- The Detectives wrote she "snapped" during the attack and included the word in quotes, but the word "snapped" does not appear in her Interview transcript.

- Detective LaRochelle, during the recorded Interview, implied she "completely lost it" during the attack, when she never used that specific phrase.

AB at 23.

6. **Jail cell conversation**: Lobato claims Detective Thowsen fabricated evidence by writing in the Officer's Report that she told him her Clark County Detention Center ("CCDC") cell resembled the area where her attack occurred. AB at 20. As discussed in detail *infra* in §III(A)(2)(a)(1), this is a disputed fact. However, Lobato, in 2002, testified under oath this conversation did occur.

## B. THE DISTRICT COURT'S "DISPUTED FACTUAL" FINDINGS ARE EITHER IMMATERIAL OR "BLATANTLY CONTRADICTED" BY THE RECORD.

The district court's Order identified three factual disputes: (1) whether the Detectives "coerced Lobato or overbore her will during her [Interview]," (2) whether the Detectives "destroyed any notes from witness interviews with the intention of fabricating or omitting evidence," and (3) whether Lobato told Detective Thowsen "that her jail cell resembled the area in which she had been attacked." 1-ER-016. None of these facts are material to Lobato's remaining claims.

First, with respect to Lobato's Interview, discovery revealed no evidence supporting an involuntary confession claim, and Lobato rightly abandoned the claim. 2-ER-116 n.7; 1-ER-007. Second, the fact the Detectives destroyed their

MAC:14687-221 5048786_3.docx

notes is immaterial as the witnesses all agree their voluntary statements (and subsequent trial testimony) are accurate, truthful, and were not procured by illicit means. *See* 11-ER-2476, 2482 (Lobato); 20-ER-4689-4692 (Tienken); 20-ER-4777-4779 (Twining); 21-ER-4801, 4807-4809 (Pyszkowski); 21-4827-4848 (Reninger). There is no evidence the Detectives coerced witnesses or told them what to say. In fact, the witnesses (including Lobato) have testified to the opposite. *See* 11-ER-2476, 2482 (Lobato); 20-ER-4689-4692 (Tienken); 20-ER-4777-4779 (Twining); 21-ER-4801, 4807-4809 (Pyszkowski); 21-4827-4848 (Reninger). The mere fact the Detectives destroyed their notes is irrelevant. *See Downs v. Hoyt*, 232 F.3d 1031, 1037-38 (9th Cir. 2000) (holding bad faith destruction of handwritten notes cannot be inferred simply from selective destruction of notes, especially when the detective transferred those notes to other reports, without showing materiality); *Tabb v. Christianson*, 855 F.3d 757, 767-68 (7th Cir. 2017) (holding that destruction of interview notes does not constitute a violation where plaintiff cannot show the notes contained material evidence). Finally, Lobato's own expert agrees the Detectives' destruction of their notes was the standard practice in 2001. 20-ER-4539-4540.

Third, the district court's finding that it is disputed whether the jail cell conversation between Detective Thowsen and Lobato occurred is not material as explained *infra* in §III(A)(2)(a)(1).

## III.   LEGAL ARGUMENT

### A.   THE DISTRICT COURT ERRED IN FAILING TO GRANT THE DETECTIVES QUALIFIED IMMUNITY ON LOBATO'S §1983 FABRICATION OF EVIDENCE CLAIM.

#### 1.   Lobato understates *Deveraux*'s "stringent" fabrication of evidence test.

A clearly established due process right exists not to be subjected to criminal charges based on false evidence that was fabricated by the government. *See Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001). Lobato argues because the Detectives omitted and mischaracterized a few statements from her recorded Interview in their Reports, they "fabricated" evidence. The Answering Brief incorrectly suggests a low bar exists to establish a fabrication of evidence claim.

The crux of a deliberate fabrication of evidence claim is the denial of the right to fair trial. *Richards v. Cty. of San Bernardino*, 39 F.4th 562, 573 (9th Cir. 2022). "[N]ot all inaccuracies in an investigative report give rise to a constitutional claim." *Spencer v. Peters,* 857 F.3d 789, 798 (9th Cir. 2017) (citing *Black v. Montgomery Cty.*, 835 F.3d 358 (3d Cir. 2016)). In *Black*, the Third Circuit stated, "a civil plaintiff's fabricated evidence claim should not survive summary judgment unless [s]he can demonstrate that the fabricated evidence 'was so significant that it could have affected the outcome of the criminal case.'" *Black*, 835 F.3d at 372 (citing *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014)). "There must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware

MAC:14687-221 5048786_3.docx

that evidence is incorrect or that the evidence is offered in bad faith." *Id.* "'[I]t will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case.'" *Id.* Therefore, evidence that an investigator's report "may have been careless or inaccurate, [] does not satisfy *Devereaux's* stringent test." *Gausvik*, 345 F.3d at 817; *see also Devereaux*, 236 F.3d at 1076-77 ("Failing to follow guidelines or carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating evidence is quite another.").

The definition of the word "fabricate" is important. It is defined in Black's Law Dictionary as: "[t]o ***invent***, forge, or devise falsely." *See Fabricate*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Fabricated evidence by definition cannot be reliable, but an unreliable statement is not necessarily fabricated. *See Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014). Fabricated evidence is evidence "that is made up; it is invariably false." *Id.* A plaintiff's use of phrases such as "[m]anufactured false evidence . . . are not magic talismans" that "give rise to a cognizable claim where one does not exist." *Id.* at 423.

This Circuit has held that investigators who make up or invent evidence not supported by evidence elsewhere in the file violate the Fourteenth Amendment. *See, e.g., Constanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 (9th

Cir. 2010); *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). However, when an investigator mischaracterizes evidence and/or includes inaccurate statements in their reports but those facts are still supported by other credible evidence, this Court has held no constitutional violation occurs. *See Gausvik v. Perez.*

Here, Lobato argues the Detectives "fabricated evidence" because their Reports mischaracterized and omitted certain of her own statements. None of the mischaracterizations or omissions are material because credible evidence found elsewhere in the Detectives' file supported the Detectives' representations. Thus, the evidence was not "fabricated" or invented, but rather a non-material mischaracterization or inaccuracy.

> **2.** **Lobato's evidence does not meet *Devereaux's* "stringent test" because none of the alleged mischaracterizations or inaccuracies were fabricated by the Detectives.**

Lobato divides her "fabricated evidence" evidence into two groups: (a) "events that never happened or words never said" and (b) "misrepresentations, mischaracterizations, and omissions that portray the evidence in a false or misleading light." The following analyzes both groups.

> **a.** **Lobato's alleged "Events that Never Happened or Words Never Said."**

Lobato alleges the Detectives' deliberately fabricated evidence because their Reports (1) "contain statements suggesting she was attacked in an enclosed area

similar to a jail cell" to imply similarities to the Bailey murder; (2) misrepresent the injury she claimed to have inflicted on her attacker; and (3) claim she "snapped" and "completely lost it" during the attack. AB at 38-41.

> **(1) Lobato admits the jail cell conversation occurred.**

Lobato claims the Detectives fabricated a conversation that never occurred. In the Officer's Report, Detective Thowsen memorialized a post-arrest conversation with Lobato during which she "said that the cell enclosure [at CCDC] reminded her of the location in which she had been attacked; she also added that the location of the attack did not have a covering and that she could s[ee] the metal covering of a carport area." 11-ER-2397. Lobato, in her Answering Brief, denies this conversation occurred. Lobato's denial is "blatantly contradicted" by the record as she testified to this conversation at her 2002 criminal trial:

Q: Did you and Detective Thowsen have a conversation at the Clark County Detention Center?

A: *Yes, we did*.

. . .

Q: Did you make any comments about this holding cell?

A: *Yes, I did.*

Q: What did you tell him?

A: *I told him that it reminded me of the place near where my attack occurred.*

Page 10 of 34

17-ER-3714 (emphasis added); *see also* 17-ER-3757-59. At her 2020 deposition, Lobato did not deny this conversation and only testified, "*I don't think* that is something I would have said." 11-ER-2482, 2485 (emphasis added). So, Lobato has never denied this conversation occurred—only that (twenty years later) she does not recall it. A party cannot "create an issue of fact by an affidavit contradicting [her] prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (discussing sham affidavit rule). Thus, the jail cell issue does not create a genuine issue of material fact. *See George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (courts can ignore a plaintiff's attempt to fabricate factual issues if there is "dispositive evidence that 'blatantly contradict[s]' or 'utterly discredit[s]' [the plaintiff's] side of the story").

### (2) The Detectives did not fabricate evidence regarding the alleged injury Lobato inflicted on her attacker.

Lobato next claims the Detectives deliberately fabricated evidence by exaggerating the injury she claimed to have inflicted on her attacker. Lobato told the Detectives "I cut his penis, I remember that" and that "I was trying to cut it off but I don't know if I actually did" (11-ER-2505) and "I just remember for [sic] grabbing as much as I could just grab [referring to his testicles and penis]" (11-ER-2522). Lobato claims that after she grabbed her attacker's penis, her memory stops

and "everything goes black." 11-ER-2504. The Detectives, in the Officer's Report, wrote Lobato "cut it off", and in the Arrest Report stated Lobato "thought that she had severed the penis from the male's body."

Although somewhat inaccurate, the Reports did not fabricate or invent evidence. Several witnesses reported that Lobato had bragged to them of severing her attacker's penis. Tienken said Lobato told her "she cut off his penis and threw it" (11-ER-2532); Austria reported Lobato told her she "slashed" her attacker's penis and "pretty much figured that she had killed him" (12-ER-2677); Brown overheard Lobato tell Austria "about cutting someone's penis off" (12-ER-2687); Lobato told Reininger she "chopped his dick off" (11-ER-2580); and Bywater "heard from a person named Jeff that [Lobato] had cut off some guy's 'member'" (11-ER-2398). None of the witnesses ever retracted their statements. *See* 13-ER-3057-3058 (Tienken); 14-ER-3123 (Brown); 11-ER-2405 (Reininger); 11-ER-2406 (Twining); *see also* 13-ER-3804 (Johnson). Lobato now denies ever telling *anyone* she cut-off someone's penis. 11-ER-2466, 2478. However, she does not accuse the witnesses of fabricating evidence, only that a "misunderstanding" occurred. 17-ER-3743, 3745, 3747, 3753.

Therefore, the Detectives received credible information that Lobato claimed to have severed her attacker's penis and, therefore, did not fabricate or invent this fact. Even Lobato admits that no one fabricated evidence because, at most, the

MAC:14687-221 5048786_3.docx

evidence is based on a "misunderstanding." *See Gausvik*, 345 F.3d at 817 (no constitutional violation where investigator reported an exam was "positive" for sexual abuse when the test was only "suggestive" or "consistent" for abuse.)

> ### (3) The Detectives did not fabricate evidence by stating Lobato "snapped" and "completely lost it."

Lobato's third example of "words not said" is the Detectives use of the word "snapped" and the phrase "completely lost it." AB at 41. The Officer's Report states that after Lobato grabbed her attacker's penis, she just "'snapped' and cannot remember what else happened." 11-ER-2396. [Detective LaRochelle testified Lobato used the word "snapped" prior to the Detectives recording. 3-ER-575, 4-ER-617.] Although an issue of fact exists as to whether Lobato used the exact word "snapped", the dispute is not material as the word was a fair interpretation of the evidence. The relevant definition of the word "snapped" is "to give way suddenly under emotional stress or strain." *See* Snap, Merriam-Webster, http://www.merriam-webster.com/dictionary/snap. Lobato told the Detectives "I just grabbed [the knife] out and *everything goes black from then on.* I don't remember a lot. I don't know what I did after that." 11-ER-2504. Thus, although the term "snapped" may not have been an exact quote, the implication by the Detectives was not fabricated. At most, the Detectives' use of the word "snapped" constitutes an inaccuracy. *See Gausvik*, 345 F.3d at 817 (mere carelessness or

MAC:14687-221 5048786_3.docx

inaccuracy's insufficient to support fabrication of evidence claim); *Devereaux*, 263 F.3d at 1077 (evidence of negligent inaccuracy on the part of investigators alone is insufficient to prove fabrication of evidence claim).

Neither Report says Lobato "completely lost it." This claim arises from Detective LaRochelle's interview question, "[y]ou mentioned that when you went to cut him that you completely lost it, is there anything about your past that made you particularly emotional about the situation?" 11-ER-2520. This question was the Detective's summarization of Lobato's earlier statement that, "I just grabbed [the knife] out and everything goes black from then on. I don't really remember a lot. I don't know what I did after that." Lobato answered the question and did not correct Detective LaRochelle. This is not fabricated evidence.

> **b.    The officers did not misrepresent, mischaracterize, or omit evidence, nor did they portray the evidence in a false light.**

Lobato's second section argues the Detectives fabricated evidence by "deliberately mischaracteriz[ing]" evidence regarding the timing, location, and characteristics of the Lobato's attacker, and the nature of the attack. AB at 41-47. Because the Detectives' Opening Brief thoroughly addresses these issues (AOB at 38-48), the following only responds to Lobato's specific allegations.

MAC:14687-221 5048786_3.docx

### (1)    The Detectives did not fabricate evidence regarding the timing of the attack.

Lobato claims that "[d]uring the fifteen to twenty minutes [the Detectives] talked to her before they turned on the tape recorder, *Lobato told them* she had been attacked at a Budget Suites on the east side of town around Memorial Day." AB at 5, 14 (emphasis added). Thus, Lobato represents she expressly told the Detectives she was talking about an event that occurred "around Memorial Day." This is patently false. In support of this falsehood, Lobato refers to her 2002 criminal trial testimony:

> Q:    *What did you tell them?* ***Strike that.*** What happened to you?
>
> A:    I was coming home –
>
> Q:    About when was this?
>
> A:    It was about the early morning.
>
> Q:    What month?
>
> A:    It was around Memorial Day.

17-ER-3695, 3698-99 (Emphasis added.) Thus, Lobato never testified *she told the Detectives* her attack occurred "around Memorial Day." Lobato confirmed this truth during her 2020 deposition:

> Q:    So when you were talking to the detectives, did you ever tell them that the incident you were talking about occurred around Memorial Day?

MAC:14687-221 5048786_3.docx

A: ***I don't think I said that specific time frame***, but I did tell them it had been over a month.

Q: Right. At the end of you recorded statement, you said, "This occurred over a month ago," correct?

A: Correct.

Q: And to your recollection, is that the only time frame or time period that you gave the detectives as to the incident you were discussing?

A: Yes.

11-ER-2477. When asked about the pre-recording conversation, Lobato testified she told the Detectives "everything that's in my statement." 11-ER-2475. Thus, the actual evidence is that Lobato never told the Detectives she was attacked "around Memorial Day weekend."

Lobato also argues the Detectives fabricated evidence about the date of her attack by: (a) omitting her statement that her attack occurred "over a month ago," (b) by representing her leaving of her vehicle at Jeremy's was unrelated to her attack; and (3) claiming she returned to Panaca on July 13th to receive medical treatment after the attack. AB at 41-45.

First, Lobato's "over a month ago" statement did not place her attack anywhere near Memorial Day Weekend. Not only did the Detectives lack any reason to assume a Memorial Day Weekend attack, but they actually obtained credible evidence supporting a July attack. Tienken said Lobato visited her in mid-

MAC:14687-221 5048786_3.docx

July and gave her the impression the attack "had just happened a day or two before." 11-ER-2539. Austria reported Lobato's attack occurred "within the first couple of weeks [of] or sometime before" July. 12-ER-2678. Austria also told the Detectives that Lobato was "very upset" about the incident and had begun taking medication for depression. 12-ER-2676-77. The Detectives knew that Lobato began taking antidepressants five days after Bailey's murder, on July 13th. 14-ER-3106, 19-ER-4206. Two alibi witnesses (after discussing the incident with Lobato's father) did claim Lobato had reported a May 2001 attack. Reininger told the Detectives that Lobato claimed to have "beat someone up and chopped his dick off" in May 2001, but she also claimed that incident was the result of Lobato protecting her sister. 11-ER-2589 & 2591. Lobato's boyfriend Twining told the Detectives that around the end of May or first part of June, Lobato said she "cut a guy's penis." 12-ER-2611. The Detectives dutifully noted both Reininger's and Twining's exculpatory statements in their Officer's Report. 11-ER-2406-07. In sum, the Detectives received evidence supporting both a July attack and a May attack and acknowledged as much in their Officer's Report.

Second, Lobato alleges the Detectives fabricated evidence by concluding her leaving of her car at her ex-boyfriend's house was unrelated to her attack. Lobato told the Detectives she "ditched" her car at Jeremy's house and witness Pyszkowski provided supporting tow receipts dated early June. AB at 43. The

MAC:14687-221 5048786_3.docx

Detectives investigated Lobato's claim and concluded that the two events were unrelated based on credible evidence. 11-ER-2396, 2398-99. The Detectives found two witnesses with knowledge of the car issue, Tienken and Pyszkowski.[2] Both told the Detectives that Lobato's attack and the "ditching" of her vehicle were completely unrelated events. 20-ER-2548-2449; 21-ER-4806. Both witnesses independently told the Detectives that Lobato left her vehicle at Jeremy's because the couple had a "fight." *Id.* Therefore, the Detectives' subjective conclusion is not fabricated evidence. "Police officers 'must be given some latitude in determining when to credit witnesses' denials and when to discount them, and we are not aware of any federal law . . . that indicates precisely where the line must be drawn." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135-36 (9th Cir. 2009) (citing *Devereaux*, 263 F.3d at 812).

Third, Lobato claims the Detectives fabricated evidence by reporting she returned to Panaca "after the incident" to see a doctor "due to her depression from the incident." AB at 44. The Detectives reported this fact because it is true. Lobato told the Detectives she returned to Panaca (from Las Vegas) "on Friday the 13th to get clean." 11-ER-2514. While the Detectives were transporting Lobato to CCDC, she asked to take her Prozac, and the Detectives noted her prescription was issued

---

[2] Tienken and Pyszkowski have no known connection to one another.

MAC:14687-221 5048786_3.docx

on July 13, 2001. 11-ER-2397. A week later, witness Austria told the Detectives Lobato told her she began taking antidepressants due to her attack. 12-ER-2672 & 2676-2677. Lobato's medical records confirmed she visited her doctor on July 5th and reported no symptoms consistent with depression and then returned on July 13th with symptoms of depression. 19-ER-4195-4206. Thus, the Detectives representation that Lobato returned to Las Vegas on July 13th to receive treatment for depression was accurate and based on credible evidence. The issue certainly was not fabricated or invented to frame Lobato.

### (2) The Detectives did not fabricate evidence regarding the location of Lobato's attack.

Lobato claims the Detectives fabricated evidence by implying she was unsure where her attack occurred. She told the Detectives her attack occurred on the east side of Las Vegas in a Budget Suites parking lot. AB at 43. The Detectives documented Lobato's claim in both reports but included the words "she believed" (11-ER-2395) and "appeared unsure" (21-ER-4838). Lobato claims the inclusion of these statements was fabrication because it cast doubt on her statements.

The two statements were supported by credible evidence. When asked if she could be mistaken about the location, Lobato replied, "it's possible … I don't remember a lot." 11-ER-2514. She also admitted that "I was out of my mind on drugs" (11-ER-2502) and did not know Las Vegas "very well at all" (11-ER-2514).

MAC:14687-221 5048786_3.docx

Evidence from other witnesses also called Lobato's recollection into question. Witness Tienken reported Lobato told her the attack occurred on the *west side* of Las Vegas on either West Flamingo or West Tropicana, and it occurred "between buildings or in an alley." 11-ER-2532, 13-ER-3064-65. (Bailey was murdered on West Flamingo.) Thus, the Detectives had a valid basis to subjectively conclude that Lobato was "unsure" about the location of her attack. At a minimum, the Detectives did not fabricate or invent this issue, and they are entitled to use their training and experience during their investigations. *See, e.g., McSherry*, 584 F.3d and 1135-35; *Richards v. Cty. of San Bernardino*, 2022 WL 2292830, *2 (9th Cir. June 24, 2022) (Detective's lay opinions regarding his observations of a victim's body were matters of opinion and did not give rise to a constitutional claim).

### (3)   The Detectives' Reports *did* omit Lobato's statements regarding the size of her attacker.

Lobato claims the detectives fabricated evidence by omitting her claim that her attacker was "really big" and "seemed like a giant compared to me." AB at 43. Although the Detectives did not include these statements, the omission is not material because an omission only constitutes fabrication if it would "render an otherwise true statement false." *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015). Here, the omission of Lobato's impression as to the size of her attacker did not render an otherwise true statement false. And, the omission is not material, because

MAC:14687-221 5048786_3.docx

omissions, standing alone, do not state a claim for fabrication of evidence. *See Amory v. Katz*, No. 3:15-CV-01535, 2016 WL 7377091, at *9 (D. Conn. Dec. 19, 2016) ("Rather than accusing [the investigators] of creating false evidence against him, Mr. Armory accuses them of omitting potentially helpful information, namely, interviews with important witnesses and potentially exculpatory video evidence," accusations insufficient in law to suggest the detectives "fabricated evidence in violation of Mr. Armory's constitutional rights" during the preparation of an arrest warrant).

> **(4)** **The Detectives did not fabricate evidence regarding the injury Lobato allegedly inflicted on her attacker.**

Lobato told the Detectives her goal was to sever her attacker's penis, but she was unsure if she succeeded. 11-ER-2505. Both Reports suggest she amputated her attacker's penis. As set forth *supra* in section III(A)(2)(a)(3), although the Reports inaccurately summarized Lobato's statement, the conclusion was supported by other witnesses who reported Lobato bragged of severing her attacker's penis. Thus, the Detectives did not fabricate or invent this fact.

> **3.** **There is no evidence of indirect or circumstantial fabrication.**

To prove a fabrication of evidence claim using circumstantial evidence, a plaintiff must show that: (1) the detectives continued their investigation "despite

MAC:14687-221 5048786_3.docx

the fact that [they] knew or should have known that [the plaintiff] was innocent; or (2) [the detectives] used investigative techniques that were so coercive and abusive that [they] knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076. Here, there is no evidence supporting either prong. As discussed above, Lobato's allegations primarily involve the Detectives' alleged mischaracterization and omission of statements she made during her interview. However, each mischaracterization or inaccuracy was supported by credible evidence obtained from other sources during the investigation. Thus, there is no evidence the Detectives continued their investigation despite knowing Lobato was innocent. Lobato never argues the Detectives used coercive tactics.

> **4. Even if a constitutional violation occurred, the Detectives are entitled to qualified immunity under the second prong of the qualified immunity analysis.**

The second prong of the qualified immunity analysis asks whether the constitutional right was "clearly established" at the time of the alleged constitutional violation. *Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022) (citations omitted). This inquiry is "a pure question of law for the court to decide." *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (citation omitted). "A constitutional right is clearly established if the official had fair notice that her conduct was unlawful but still engaged in it." *Wright v. Beck*, 981 F.3d 719, 734

MAC:14687-221 5048786_3.docx

(9th Cir. 2020) (internal quotations and citation omitted). To determine whether the official had "fair notice," courts usually look to binding precedent in search of "a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution. *White v. Pauly*, 580 U.S. 73, 79 (2017). It is the plaintiff's responsibility to provide the clearly established law that clarifies the factual basis for the alleged constitutional violation. *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).

The Detectives agree it is self-evident "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1074-75. *Devereaux*'s general admonition is too high-level for this case because there is no evidence the Detectives invented witness interviews, created evidence, coerced witnesses, or included factual representations not supported by their investigation. Rather, the Detectives are accused of inaccurately summarizing Lobato's own statement in their Reports with evidence found elsewhere in their investigation.

This Circuit has issued several published opinions involving fabrication of evidence claims. Because Lobato's investigation occurred in July 2001, the most applicable opinions are: *Devereaux v. Abbey* (1994 investigation); *Gausvik v. Perez* (1995 investigation); *Constanich v. Dept. of Social and Health Services* (July

2001 investigation); and *Spencer v. Peters* (1984 investigation). As explained in the Detectives' Opening Brief, *Gausvik* is the closest case. *See* OB at 52-53. Lobato does not even cite to *Gausvik* [3] –let alone distinguish it.

In *Gausvik,* an investigator arrested the plaintiff for sexual abuse of children. 345 F.3d at 814-15. Relevant to this case, the plaintiff argued the investigator falsified his affidavit for probable cause by including several mischaracterizations/inaccuracies and outright lies. For example, the investigator reported the children had tested "positive" for sexual abuse when in truth the tests were only "suggestive" or "consistent" with sexual abuse. *Id.* at 817. Also, the investigator lied that eight children had accused the plaintiff of sexual abuse when, in truth, only two had done so. *Id.* The district court denied summary judgment finding the allegations stated a constitutional violation.[4] On interlocutory appeal, this Court found jurisdiction existed and reversed the district court's denial of qualified immunity. This Court determined the discrepancies showed only "that [the investigator] carelessly handled the facts and the investigation" and the "careless or inaccurate" information did not satisfy the "stringent test" for deliberate fabrication. *Id.* A fair reading of *Gausvik* indicates the Court found no

---

[3] The district court, in its summary judgment order, also ignored *Gausvik* and made no attempt to distinguish it from Lobato's case.

[4] For more factual detail see the district court's decision at *See Gausvik v. Perez*, 239 F.Supp.2d 1067, 1085-94 (E.D. Wash. 2002).

constitutional violation because the mischaracterizations and lies were not invented or completely made up– i.e., there was some evidence of sex abuse and two witnesses did in fact accuse the plaintiff. Thus, *Gauvik* stands for the proposition that a suspect's right to a fair trial is not violated when an investigator knowingly exaggerates and embellishes evidence, so long as the factual representations have some evidentiary support.

*Gausvik*'s holding is applicable to Lobato's case. She alleges the Detectives fabricated evidence regarding the timing, location, her attacker's characteristics, and nature of attack. Although the Detectives arguably mischaracterized and omitted some of Lobato's statements in their Reports, the Detectives' inaccuracies found credible support elsewhere in the investigation. In other words, although the Detectives might have been careless or inaccurate in their summary of Lobato's recorded Interview, their alleged inaccuracies and misstatements were supported by evidence learned from other sources and that same evidence was presented at trial– as were the Detectives' errors.

In cases where this Court has found a viable fabrication of evidence claim, the Court stresses that the investigators created or invented evidence out of thin air that found no support elsewhere in the investigation.

In *Devereaux v. Abbey*, a foster parent brought a §1983 claim alleging that, in 1995, police had used improper interrogation techniques against his foster

children, leading to false criminal charges for child abuse. 263 F.3d at 1076-80. This Court acknowledged a clearly established right existed to be free from fabricated evidence. However, the case involved a coerced confession claim, and Lobato, at the summary judgment stage, abandoned her claim on that issue. Therefore, factually, *Devereaux* is of little value to this case besides establishing the general constitutional issue.

In *Constanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010), plaintiff alleged that in 2001 a social worker intentionally fabricated witness statements and lied about interviewing witnesses she "only attempted to make contact with." *Id.* at 1111-1112. Six witnesses claimed the investigator "was a hostile interviewer who twisted their words and attributed to them statements they did not make." *Id.* at 1105. The opinion does not state the made-up statements were supported elsewhere in the investigation. Thus, the investigators invented facts out of thin air unsupported by the actual investigation, and the Court allowed the claims to proceed.

*Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) involved a 1994 child sex-abuse case investigation. In that case, a plaintiff introduced evidence that a police report "contained scores of quotations attributed to [the victims], both of whom unequivocally testified at trial that they never made those statements." 857 F.3d at 798. The report "contained many specific quotations attributed to [a

MAC:14687-221 5048786_3.docx

victim]. [The victim] testified at trial that, not only did she not make those statements to [the investigator], but she affirmatively told [the investigator] that no abuse had occurred." *Id.* Because the false quotations were not supported by credible evidence found elsewhere in the record, this Court found that "the misquotations here cannot be explained as carelessness or as a mistake of tone; nor are they trivial or without consequence." *Id.* at 798-99. Qualified immunity was denied.

The differences between *Gausvik* and *Spencer* and *Constanich* are obvious. In *Spencer/Constanich* the investigators invented and made-up evidence out of thin air. Although the *Gausvik* investigator made-up and mischaracterized material facts, those facts had credible support elsewhere in the record and, therefore, did not deny the plaintiff the right to fair trial. The *Gausvik* court held that such "careless[ness]" and mistakes of "tone" are insufficient to find a constitutional violation.

As a final note, the district court ignored all of the above cases and held that the cases of *Liston v. City of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997), and *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), provided the necessary clearly established law. Neither case is factually analogous to Lobato's case as both cases are Fourth Amendment judicial deception claims –not Fourteenth Amendment fabrication of evidence claims. Lobato's Answering Brief essentially

MAC:14687-221 5048786_3.docx

concedes that *Liston* and *Stanert* do not apply as the brief does not seriously analyze them.

### 5. Lobato cannot establish causation.

Lobato must also establish causation. *Spencer*, 857 F.3d at 798. A presumption exists "that the prosecutor filing the complaint exercised independent judgment in determining probable cause for an accused's arrest exists at the time." *Caldwell v. City & Cty. of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018) (citing *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)). A plaintiff can overcome the presumption by showing the investigators presented the district attorney with "information known by them to be false" or "that the officers knowingly withheld relevant information" from the prosecutor. *Id.* at 1116 (citations omitted).

Here, as explained above, the Detectives did not provide the prosecutor with any knowingly false information as all Lobato's contested mischaracterizations were supported by credible evidence obtained during the investigation, and no information was withheld from the prosecutor as it is undisputed Lobato's voluntary statement was provided contemporaneously with the Reports. The fact that the alleged fabricated evidence "*could have* contributed to [Lobato's] deprivation of liberty does not establish but-for causation as required by our

MAC:14687-221 5048786_3.docx

decision in *Spencer*." *Tobias v. East*, 20-55845, 2021 WL 5194098, *1 (9th Cir. 2021).

### B. THE DISTRICT COURT ERRED IN FAILING TO GRANT QUALIFIED IMMUNITY ON LOBATO'S §1983 CONTINUED DETENTION WITHOUT PROBABLE CAUSE CLAIM.

"Probable cause arises when an officer has knowledge based on reasonably trustworthy information that the person arrested has committed a criminal offense." *Gausvik*, 345 F.3d at 818. It is "not a high bar." *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (citations omitted). Lobato claims the Detectives "concealed the glaring inconsistencies between her statement about the May attack and the facts of the Bailey murder by fabricating evidence." AB at 62. As discussed, *ad nauseum* above, all the information in both Reports was based upon credible evidence learned during the investigation. Based upon the totality of the evidence, a fair probability existed that Lobato was involved in the Bailey murder. It cannot be overlooked that upon hearing all the evidence (including the same arguments raised in this appeal), two criminal juries found Lobato guilty, and no appellate court has found the Detectives lacked probable cause.

### C. THE DISTRICT COURT ERRED IN FAILING TO GRANT QUALIFIED IMMUNITY ON LOBATO'S §1983 CONSPIRACY CLAIM.

The civil conspiracy claim is a pure issue of law – whether the intra-corporate conspiracy doctrine bars Lobato's claim. The Supreme Court agrees the

MAC:14687-221 5048786_3.docx

law is not clearly established on the issue. *See Ziglar v. Abbasi*, 582 U.S. 120, 153-54 (2017) (fact courts are divided on whether intra-corporate doctrine applies means the law is not clearly established); *Armstrong v. Reynolds*, 22 F.4th 1058, n.8 (9th Cir. 2022) ("[T]his court has expressly reserved the question 'whether individual members of a single government entity can form a 'conspiracy' within the meaning of section 1985'") (citations omitted).

Lobato argues the doctrine does not apply because "this Court has 'permitted conspiracy claims to go forward where . . . officers agreed to violate a suspect's constitutional rights." AB at 68-69. Although Lobato cites §1983 cases where conspiracy claims against officers were allowed to proceed, the intra-corporate conspiracy issue was not raised. Thus, those courts were not given the opportunity to address the issue.

### D. THE DISTRICT COURT ERRED IN FAILING TO DISMISS LOBATO'S REMAINING STATE CLAW CLAIMS.

Lobato's state law claims are inextricably intertwined with the federal law claims as she must establish lack of probable cause for her malicious prosecution claim and bad faith on her IIED and abuse of process claims. Therefore, if this Court concludes no constitutional violation occurred, then Lobato's state law claims also require dismissal.

MAC:14687-221 5048786_3.docx

## IV.   CONCLUSION

Based upon the above, the Detectives respectfully request that they are entitled to qualified immunity on Lobato's §1983 claims and that probable cause existed for her arrest defeating her state law claims.

Dated this 23rd day of May, 2023.

MARQUIS AURBACH

By /s/ Craig R. Anderson
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada  89145
*Attorneys for Defendants-Appellants, Las Vegas Metropolitan Police Department, Thomas Thowsen, and James LaRochelle*

MAC:14687-221 5048786_3.docx

# <u>CERTIFICATE OF COMPLIANCE</u>

I certify that *(check appropriate option(s))*:

1. ☒ *This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:*

    ☒ this brief contains <u>6,602</u> words (principal briefs must not exceed 14,000 words; reply briefs must not exceed 7,000 words) excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    ☐ this brief uses a monospaced typeface (10.5 or fewer characters per inch) and contains _____ lines of text (principal briefs must not exceed 1,300 lines of text; reply briefs must not exceed 650 lines of text), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. *This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:*

    ☒ this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14-point font, or

    ☐ this brief has been prepared in a monospaced spaced typeface using Microsoft Word, _____ font with _____ characters per inch.

3. *This brief complies with the enlargement of brief size permitted by:*

    ☐ Ninth Circuit Rule 28-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

    ☐ court order dated _____. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is _____ words, _____lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

MAC:14687-221 5048786_3.docx

☐ the accompanying motion for leave to file an oversize brief pursuant to Circuit Rule 32-2 and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ the accompanying motion for leave to file an oversize brief pursuant to Circuit Rule 29-2(c)(2) or (3) and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

4.   *Capital Cases:*

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Dated this 23rd day of May, 2023.

MARQUIS AURBACH

By /s/ Craig R. Anderson_____
    Craig R. Anderson, Esq.
    Nevada Bar No. 6882
    10001 Park Run Drive
    Las Vegas, Nevada  89145
    *Attorneys for Defendants-Appellants, Las Vegas Metropolitan Police Department, Thomas Thowsen, and James LaRochelle*

MAC:14687-221 5048786_3.docx

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLANTS' REPLY BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on the 23rd day of May, 2023.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:


 /s/ Leah Dell
An employee of Marquis Aurbach

MAC:14687-221 5048786_3.docx